UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VASSIL BOJKOV** <br>     43 Moskovska Street <br>     Sofia 1000 <br>     Bulgaria <br><br>         *Plaintiff,* <br><br> v. <br><br> **BRADLEY T. SMITH, in his official capacity as** <br>     **Director of the United States** <br>     **Department of the Treasury,** <br>     **Office of Foreign Assets Control** <br>     1500 Pennsylvania Avenue, NW <br>     Freedman's Bank Building <br>     Washington, D.C. 20220 <br><br>         *Defendant,* <br><br> and <br><br> **THE UNITED STATES DEPARTMENT** <br> **OF THE TREASURY, OFFICE OF FOREIGN** <br> **ASSETS CONTROL** <br>     1500 Pennsylvania Avenue, NW <br>     Freedman's Bank Building <br>     Washington, D.C. 20220 <br><br>         *Defendant.* | Case No. 1:25-cv-3617 <br><br> **COMPLAINT FOR** <br> **DECLARATORY AND** <br> **INJUNCTIVE RELIEF** |

Plaintiff Vassil Bojkov brings this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and its Director, Bradley T. Smith, and in support of his complaint alleges the following:

# INTRODUCTION

1.     Vassil Bojkov is a Bulgarian businessman who, on June 2, 2021, OFAC designated pursuant to Executive Order ("E.O.") 13818 for allegedly having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of corruption by a foreign person.

2.     As a result of his designation, Mr. Bojkov's name was incorporated into the Specially Designated Nationals and Blocked Persons List ("SDN List"), and all property in which he had an interest that was or came within the United States was blocked. In addition, U.S. persons were prohibited from engaging in transactions or dealings with him absent an applicable statutory exemption or a license issued by OFAC, and foreign persons who engaged in certain transactions or dealings with him were themselves subject to designation under E.O. 13818.

3.     Over three and a half years ago, on March 12, 2022, Mr. Bojkov submitted a petition for administrative reconsideration to OFAC seeking the rescission of his designation and the removal of his name from the SDN List ("Petition"). The Petition was submitted to OFAC pursuant to its procedures governing removal from the SDN List and public guidance on seeking such removals.

4.     Since that time, Mr. Bojkov has supplemented his Petition three times with information and arguments supporting his request for removal, and has responded to three questionnaires issued by OFAC seeking information in connection with its adjudication of the Petition. Notably, Mr. Bojkov responded to OFAC's third questionnaire over a year ago, on August 15, 2024. Since that time, OFAC has failed to adjudicate the Petition.

5.     OFAC's designation of Mr. Bojkov—and OFAC's failure to adjudicate the Petition—has caused substantial harm to Mr. Bojkov personally, professionally, and financially,

tarnishing his reputation and upending his ability to conduct basic transactions to support his livelihood. Defendants have exacerbated Plaintiff's ongoing harm by unreasonably delaying adjudication of the Petition.

6. In delaying this matter, the Defendants are treating Plaintiff differently than similarly situated parties who engaged in the same administrative process as Plaintiff to seek rescission of their designations. Specifically, other individuals sanctioned under E.O. 13818 for corruption—*i.e.*, similarly situated parties—have had their petitions adjudicated, and their designations rescinded and their names removed from the SDN List in as little as eight (8) months. Thus, Defendants' disparate treatment of Plaintiff is demonstrated by their failure to adjudicate Plaintiff's Petition for Removal as expeditiously as those submitted by similarly situated parties, and by failing to provide a reasoned explanation for their delay.

7. Accordingly, Mr. Bojkov seeks this Court's intervention to enjoin OFAC from its unlawful maintenance of his designation and refusal to process the Petition, and to compel OFAC to issue a determination as to the Petition.

## JURISDICTION AND VENUE

8. This action arises under the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*; the Global Magnitsky Human Rights and Accountability Act, 22 U.S.C. § 2656 *note*; and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

9. This Court may grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Federal Rule of Civil Procedure 57. This Court may grant injunctive relief in accordance with Federal Rule of Civil Procedure 65.

10. Venue is proper in the District of Columbia pursuant to 28 U.S.C. §§ 1391(b) and (e), as Defendants reside in the District of Columbia.

## THE PARTIES

11. Plaintiff Vassil Bojkov is a Bulgarian national who is, and was at all times relevant herein, resident at 43 Moskovska Street, Sofia 1000, Bulgaria. Mr. Bojkov is sanctioned pursuant to E.O. 13818 and his name is included on the SDN List.

12. Defendant OFAC is an administrative agency of the United States Department of the Treasury, located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington D.C. 20220. OFAC is responsible for maintaining and administering the SDN List. This includes by placing persons on and removing persons from the SDN List consistent with E.O. 13818, and the implementing regulations located at 31 C.F.R. Parts 501 and 583, the "Reporting, Procedures and Penalties Regulations" and "Global Magnitsky Sanctions Regulations," respectively. OFAC was responsible for designating Mr. Bojkov under E.O. 13818 and is responsible for adjudicating the Petition.

13. Defendant Bradley T. Smith is the Director of OFAC. In this role, Director Smith is responsible for overseeing and directing OFAC's operations, including the adjudication of petitions for administrative reconsideration. Director Smith is sued in his official capacity.

## FACTUAL ALLEGATIONS

### A. OFAC's Designation of Mr. Bojkov Under E.O. 13818

14. On June 2, 2021, OFAC designated Mr. Bojkov pursuant to E.O. 13818, for allegedly having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of corruption by a foreign person. *Notice of OFAC Sanctions Action*, 86 FED. REG. 30,517 (June 8, 2021); Press Release, U.S. Dep't of the Treasury,

*Treasury Sanctions Influential Bulgarian Individuals and Their Expansive Networks for Engaging in Corruption* (June 2, 2021), *available at*: https://home.treasury.gov/news/press-releases/jy0208.

15. The press release announcing Mr. Bojkov's designation stated that Mr. Bojkov was designated for having allegedly engaged in the following conduct:

- First, the press release alleged that Mr. Bojkov "bribed government officials on several occasions," including "a current political leader and the former Chairman of the now-abolished SCG." *Id.*

- Second, the press release alleged that "Bojkov also planned to provide a sum of money to a former Bulgarian official and a Bulgarian politician earlier this year [(i.e., 2021)] to help Bojkov create a channel for Russian political leaders to influence Bulgarian government officials." *Id.*

- Third, the press release alleged that "Bojkov is currently in Dubai, United Arab Emirates, where he successfully evaded Bulgarian extradition on a number of charges levied in 2020, including leading an organized crime group, coercion, attempted bribery of an official, and tax evasion." *Id.*

- Fourth, the press release alleged that the "Prosecutor's Office of the Republic of Bulgaria found that in February 2018, Bojkov paid the then-Chair of the SCG 10,000 Bulgarian Lev (approximately $6,220) on a daily basis to revoke Bojkov's competitors' gambling licenses." *Id.* According to the press release, "[f]ollowing this massive bribery scheme, the Chair of the SCG resigned, was arrested, and the SCG was abolished," and "[t]here remains an international warrant for Bojkov's arrest as his influence continues in Bulgaria." *Id.*

5

- Fifth, and finally, the press release alleged that, "[i]n advance of the July 2021 Bulgarian parliamentary elections, Bojkov registered a political party that will run candidates in the aforementioned elections to target Bulgarian politicians and officials." *Id.*

16. As a result of his designation, Mr. Bojkov's name was incorporated into the SDN List, and all property in which he had an interest that was or came within the United States was blocked. In addition, U.S. persons were prohibited from engaging in transactions or dealings with him absent an applicable statutory exemption or a license issued by OFAC. Moreover, foreign persons who engaged in certain transactions or dealings with him were themselves exposed to risk of designation under E.O. 13818.

**B.     Mr. Bojkov's December 18, 2021 Request for Administrative Record**

17. On December 18, 2021, Mr. Bojkov submitted to OFAC a request for administrative record seeking disclosure of the administrative record underlying his E.O. 13818 designation ("designation administrative record").

18. Mr. Bojkov's request for the administrative record noted that he intended to seek the removal of his name from the SDN List, and stated that he sought the designation administrative record to ensure that he could effectively challenge his designation.

**C.     Mr. Bojkov's March 12, 2022 Petition for Administrative Reconsideration**

19. OFAC administers regulatory procedures by which persons designated pursuant to its regulations and identified on the SDN List may seek their removal from the SDN List. *See* 31 C.F.R. § 501.807. OFAC's delisting procedures allow interested parties to request reconsideration of their designations by arguing that there is an insufficient basis for the designation; asserting that

6

the circumstances resulting in the designation no longer apply; or proposing remedial measures that they believe would negate the basis of the designation, if adopted. *Id*.

20. OFAC has also provided guidance for persons seeking delisting. U.S. Dep't of the Treasury, Off. of Foreign Assets Control, *Filing a Petition for Removal from an OFAC List*, *available at*: https://home.treasury.gov/policy-issues/financial-sanctions/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list/ (last accessed Sept. 17, 2025). OFAC's guidance states that "the ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior." *Id*. This guidance also offers examples of situations in which a delisting would be warranted, including "a positive change in behavior" or when "the basis of [a] designation no longer exists." *Id*.

21. On March 12, 2022, Mr. Bojkov submitted the Petition to OFAC seeking the rescission of his designation and the removal of his name from the SDN List.

22. The Petition argues that (A) an insufficient basis exists for Mr. Bojkov's designation; and (B) the circumstances underlying the designation have changed such that they no longer apply.

23. In support of Mr. Bojkov's argument that an insufficient basis exists for his designation, the Petition argues that certain factual allegations in the press release announcing Mr. Bojkov's designation are inaccurate, while certain other allegations, even if accurate, would not satisfy the designation criteria set forth in E.O. 13818. The Petition consolidates the five allegations in the press release into three categories—i.e., (i) bribery of government officials; (ii) alleged plan for Russian influence of Bulgarian officials; and (iii) evasion of Bulgarian extradition—and addresses each in turn.

24. First, the Petition asserts that Mr. Bojkov did not pay bribes to Bulgarian officials, and demonstrates that any payments Mr. Bojkov did make were not properly characterized as bribes—rather they were extortion payments—meaning that they were not sanctionable under E.O. 13818.

25. Second, the Petition asserts that Mr. Bojkov did not plan for Russian influence over Bulgarian officials. Specifically, the Petition denies any plans to pay officials to create a channel for Russian influence. Arguing in the alternative, the Petition asserts that, even if Mr. Bojkov had planned to pay officials to channel Russian influence and had registered a political party—both of which he denies—neither activity was sanctionable, as E.O. 13818 does not render sanctionable making plans or the registration of political parties.

26. Third, the Petition asserts that Mr. Bojkov did not evade Bulgarian extradition. Specifically, the Petition notes that 1) Mr. Bojkov's Bulgarian arrest warrant was issued after he was already in Dubai; 2) that he attended the extradition proceedings; 3) that a UAE court denied Bulgaria's extradition request for failure to provide necessary documentation; and 4) that Mr. Bojkov had repeatedly attempted to address the Bulgarian criminal proceeding. Furthermore, the Petition notes that Mr. Bojkov had no need to evade prosecution for tax-related charges, as he and his companies had paid all taxes on time, were regularly audited, and did not owe any outstanding taxes. Accordingly, the Petition asserts that the allegations that Mr. Bojkov evaded Bulgarian proceedings against him by residing in Dubai are inaccurate.

27. In support of Mr. Bojkov's argument that circumstances underlying his designation have changed such that his designation is no longer warranted, the Petition asserts that the lottery industry in Bulgaria was nationalized, and that the SCG was abolished. Consequently, Mr.

Bojkov's lottery businesses are not operational and there is no cause for him to make payments to the SCG.

### E. OFAC's June 17, 2022 Questionnaire

28. On June 17, 2022, OFAC issued a questionnaire seeking clarifying, corroborating, or other additional information relevant to its adjudication of the Petition, to which Mr. Bojkov timely responded on September 15, 2022.

29. Mr. Bojkov's response to OFAC's June 17, 2022 questionnaire provides detailed responses and extensive documentation responsive to OFAC's inquiries, including thorough responses to questions regarding Mr. Bojkov's alleged payment of bribes.

30. In addition, Mr. Bojkov's response to OFAC's June 17, 2022 questionnaire provided OFAC with an update on the status of his Bulgarian criminal proceedings.

31. Further, Mr. Bojkov's response to OFAC's June 17, 2022 questionnaire presented an additional argument in favor of his removal from the SDN List to supplement the two arguments included in the Petition. Specifically, consistent with OFAC's regulatory procedures and guidance on delisting from the SDN List, Mr. Bojkov proposed several remedial measures which, if adopted, would negate the basis for his designation.

### F. OFAC's January 19, 2023 Designation Administrative Record Disclosure

32. On January 19, 2023, in response to Mr. Bojkov's December 18, 2021 request for the administrative record, OFAC disclosed an unclassified, non-privileged version of the administrative record underlying Mr. Bojkov's E.O. 13818 designation.

33. The disclosed administrative record contained a redacted version of the evidentiary memorandum setting forth OFAC's evidentiary basis and conclusions underlying its determination

that Mr. Bojkov satisfied designation criteria set forth in E.O. 13818, as well as redacted versions of the exhibits to the administrative record.

### G. Mr. Bojkov's April 2, 2023 Supplement to the Petition

34. On April 2, 2023, Mr. Bojkov submitted a supplement to the Petition to OFAC. Mr. Bojkov's April 2, 2023 supplement (1) asserted two additional arguments for delisting; (2) provided certain additional information; (3) requested a meeting with OFAC to discuss the Petition; and (4) requested the opportunity to address any foreign policy guidance from the State Department.

35. First, Mr. Bojkov's April 2, 2023 supplement argues that an insufficient basis exists for designation because OFAC discounted evidence adverse to its allegations, including documentation demonstrating that he did not pay bribes, and proposes additional remedial measures that, if adopted, would negate the basis for Mr. Bojkov's designation.

36. Second, Mr. Bojkov's April 2, 2023 supplement provides additional information relevant to OFAC's consideration of the Petition, including documentation evidencing that Bulgarian tax evasion proceedings initiated against him are unfounded.

37. Third, Mr. Bojkov's April 2, 2023 supplement requests a meeting with OFAC to discuss the Petition.

38. Fourth, Mr. Bojkov's April 2, 2023 supplement requests the opportunity to address any foreign policy guidance that OFAC may receive from the State Department before OFAC adjudicates the Petition, so that Mr. Bojkov can rebut any allegations made in the guidance.

### H. OFAC's July 6, 2023 Meeting with Undersigned Counsel

39. On June 14, 2023, in response to the meeting request in Mr. Bojkov's April 2, 2023 supplement, OFAC contacted undersigned counsel requesting a preliminary meeting to discuss what would be addressed in any potential meeting with Mr. Bojkov.

40. On July 6, 2023, undersigned counsel met with OFAC. During the July 6, 2023 meeting, OFAC expressed interest in meeting with Mr. Bojkov and discussed, *inter alia*, terms for inclusion in any Terms of Removal Agreement ("TOR").

41. Since the July 6, 2023 meeting, OFAC has not sought a meeting with Mr. Bojkov.

### I. Bojkov's October 10, 2023 Supplement to the Petition

42. On October 10, 2023, Mr. Bojkov submitted a supplement to the Petition to OFAC that (1) asserts two additional arguments for delisting; and (2) provides certain additional information relevant to OFAC's consideration of the Petition.

43. First, the additional arguments for delisting included in Mr. Bojkov's October 10, 2023 supplement are that the circumstances underlying his designation have changed because he surrendered to Bulgarian authorities, and that he proposed the adoption of an additional remedial measure that would negate the basis for his designation

44. Second, Mr. Bojkov's October 10, 2023 supplement provides additional information relevant to OFAC's consideration of the Petition, including documentation of the dismissal for lack of evidence of certain criminal charges against him and updated documentation evidencing that he does not owe taxes that could form the basis for purported tax evasion.

**J.      OFAC's November 21, 2023 Questionnaire**

45.     On November 21, 2023, OFAC issued a questionnaire seeking clarifying, corroborating, or other additional information relevant to its review of the Petition, to which Mr. Bojkov timely responded on February 19, 2024.

46.     Mr. Bojkov's response to OFAC's November 21, 2023 questionnaire provided detailed responses and documentation responsive to OFAC's inquiries, including thorough responses to questions regarding the dismissal of Bulgarian criminal charges against him.

47.     In addition to responses to OFAC's questions, Mr. Bojkov's response to OFAC's November 21, 2023 questionnaire provides information countering false public reporting that he remains involved in the gambling industry.

**K.      Mr. Bojkov's June 15, 2024 Supplement to the Petition**

48.     On June 15, 2024, Mr. Bojkov submitted a supplement to the Petition to OFAC, presenting an additional argument for delisting.

49.     Specifically, Mr. Bojkov's June 15, 2024 supplement proposed several remedial measures which, alongside the remedial measures he previously proposed, would negate the basis for his designation, if adopted.

**L.      OFAC's July 1, 2024 Questionnaire**

50.     On July 1, 2024, OFAC issued a questionnaire seeking clarifying, corroborating, or other additional information relevant to its consideration of the Petition, to which Mr. Bojkov timely responded on August 15, 2024.

51.     Mr. Bojkov's response to OFAC's July 1, 2024 questionnaire provides detailed responses and documentation responsive to OFAC's inquiries, including thorough responses to questions regarding Mr. Bojkov's activities since his designation.

52. In addition to responses to OFAC's questions, Mr. Bojkov's response to OFAC's June 17, 2022 questionnaire provides certain additional information relevant to OFAC's consideration of the Petition.

53. Specifically, Mr. Bojkov's response to OFAC's July 1, 2024 questionnaire discloses the evidence that Bulgarian prosecutors purportedly had against him, and notes that the evidence primarily consists of testimony given in 2020 by witnesses who are unreliable due to their own alleged participation in corrupt activities.

54. OFAC confirmed receipt of Mr. Bojkov's August 15, 2024 response to OFAC's July 1, 2024 questionnaire on August 15, 2024.

**M.     OFAC's Delayed Adjudication**

55. On November 14, 2024, approximately three months after Mr. Bojkov responded to OFAC's July 1, 2024 questionnaire, undersigned counsel sought a status update regarding OFAC's adjudication of the Petition.

56. On December 12, 2024, approximately four months after Mr. Bojkov responded to OFAC's July 1, 2024 questionnaire, OFAC responded to undersigned counsel's November 14, 2024 correspondence, stating that OFAC was working to adjudicate the Petition in the coming months.

57. On July 8, 2025, undersigned counsel again raised, *inter alia*, Mr. Bojkov's case to OFAC noting the delays in adjudication. In response, OFAC scheduled a conference call with undersigned counsel to discuss the status of Mr. Bojkov's case as well as others. During that conference call OFAC informed undersigned counsel that Mr. Bojkov's case would be adjudicated within a matter of weeks.

58. As of the date of this complaint, OFAC has not adjudicated the Petition or issued another questionnaire.

### N. Defendants Treatment of Other Similarly Situated Plaintiffs

59. As noted above, Defendants have removed "similarly situated parties"—i.e., those designated under E.O. 13818—in eight months. Specifically, Defendants adjudicated the petition of and removed Horacio Manuel Cartes Jara, an individual also designated under E.O. 13818 for corruption, a mere eight months after Mr. Cartes submitted his petition for administrative reconsideration.

60. Indeed, it is publicly known that 1) Mr. Cartes' pursued delisting through OFAC's administrative reconsideration process; 2) filed Mr. Cartes' petition for administrative reconsideration in February 2025; 3) responded to questions posed by OFAC following the filing of the petition; and 4) OFAC adjudicated the petition and removed Mr. Cartes on October 6, 2025.

61. Adjudication of Mr. Bojkov's petition has taken over four times as long as Mr. Cartes', despite their both being designated under the same legal authority, and remains ongoing with no additional questions or engagement from OFAC in over 14 months. Indeed, since Mr. Bojkov has filed his response to OFAC's last set of questions, OFAC received (six months later) Mr. Cartes' petition, asked him questions about his arguments in the petition, and undertook an agency action which adjudicated Mr. Cartes' petition and removed him from the OFAC SDN List.

### O. Harm Suffered by Mr. Bojkov

62. OFAC's designation of Mr. Bojkov—and OFAC's failure to adjudicate the Petition—has caused substantial harm to Mr. Bojkov personally, professionally, and financially, tarnishing his reputation and upending his ability to conduct basic transactions to support his livelihood.

63. Specifically, OFAC's allegation that Mr. Bojkov has bribed Bulgarian officials resulted in the loss of commercial partnerships and business relationships. Further, the fact that Mr. Bojkov's name remains on the SDN List has barred Mr. Bojkov from accessing services offered by persons subject to U.S. jurisdiction, including financial institutions.

64. Mr. Bojkov has faced, and continues to face, extensive difficulties to his commercial and financial interests, as banks, suppliers, and customers refrain from engaging in transactions with Mr. Bojkov out of fear of their own sanctions exposure.

65. Mr. Bojkov's ongoing suffering is a direct result of OFAC's failure to adjudicate the Petition and Mr. Bojkov's continued designation under E.O 13818.

## CAUSE OF ACTION

### COUNT I

**OFAC'S FAILURE TO ADJUDICATE MR. BOJKOV'S PETITION FOR ADMINISTRATIVE RECONSIDERATION CONSTITUTES UNREASONABLE DELAY UNDER THE ADMINISTRATIVE PROCEDURE ACT**

66. Mr. Bojkov re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

67. The APA requires agencies to "conclude a matter presented to it . . . [w]ith due regard for the convenience and necessity of the parties or their representatives within a reasonable time." 5 U.S.C. § 555(b).

68. Under the APA, reviewing courts are required to compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

69. OFAC's failure to render a decision on the Petition constitutes unreasonable delay under the APA. Mr. Bojkov will continue to suffer the consequences of his designation so long as OFAC persists in refusing to render a final decision on the Petition.

## COUNT II

### DEFENDANTS' TREATMENT OF PLAINTIFF'S PETITION FOR REMOVAL IN A MANNER DISPARATE TO SIMILARLY SITUATED PARTIES CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION AND AGENCY ACTION NOT IN ACCORDANCE WITH LAW IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

70. Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

71. The APA requires agencies to "conclude a matter presented to it...[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." 5 U.S.C. § 555(b).

72. Under the APA, reviewing courts are required to compel agency actions unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

73. Federal administrative agencies must treat similarly situated parties similarly or, in the alternative, provide a reasoned explanation as to why they are being treated differently than other similarly situated persons. As noted above, Defendants have adjudicated delisting petitions to rescind E.O. 13818 designations in a significantly more expeditious manner—specifically, over 400% faster—than their treatment of Mr. Bojkov's petition. Defendants have failed to provide any explanation for why adjudication of Mr. Bojkov's petition is being delayed in comparison to these similarly situated persons, or otherwise explain the unreasonable delay in adjudicating that petition.

74. Defendants' failure to treat Plaintiff's matter in the same or a similar manner as those of similarly situated parties, and failure to provide an explanation for doing so, constitutes arbitrary and capricious agency action, an agency action not in accordance with law in violation of the APA.

**RELIEF REQUESTED**

WHEREFORE, Mr. Bojkov respectfully requests that this Court:

A.  Order OFAC to promptly adjudicate the Petition;

B.  Grant an award to Mr. Bojkov of his costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et* seq., and any other applicable provision of law; and

C.  Grant such other and further relief as the Court may deem just and proper.

Dated: October 8, 2025

                                              Respectfully submitted,

                                              /s/ Erich C. Ferrari
Erich C. Ferrari, Esq.
Ferrari & Associates
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

*Attorney for Plaintiff*