**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **VASSIL BOJKOV,** )<br><br>)<br><br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**BRADLEY T. SMITH,** )<br>    Department of the Treasury, )<br>    Director, Office of Foreign Assets Control, )<br>    *et. al.,* )<br>)<br>Defendants. )<br>) | Case No. 1:25-cv-03617-PLF |

**OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE
ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

STEPHEN M. ELLIOTT
Assistant Director
Federal Programs Branch

MICHAEL BRUNS
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
michael.bruns@usdoj.gov

*Counsel for Defendants*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.     OFAC's Decision to Deny Plaintiff's Petition for Administrative Reconsideration
Was Not Arbitrary and Capricious ................................................................................ 2

        a.     OFAC's Decision Is Entitled to a Heightened Deferential Standard
Because This Case Involves National Security and Foreign Affairs ..................... 2

        b.     OFAC Reasonably Concluded that Plaintiff Engaged in Bribery ......................... 3

        c.     Plaintiff Did Not Demonstrate Sufficient Changed Circumstances ..................... 10

        d.     Plaintiff did not show sufficient remedial measures. ........................................... 16

CONCLUSION .................................................................................................................. 17

i

## TABLE OF AUTHORITIES

**Cases**

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ................................................................................................ 2-3

*City of Huntington v. U.S. Dep't of Hous. & Urb. Dev.*,
  466 F. Supp. 3d 30 (D.D.C. 2020) ........................................................................... 3

*Dixon v. United States*,
  548 U.S. 1 (2006) ...................................................................................................... 5

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
  333 F.3d 156 (D.C. Cir. 2003) ............................................................................... 15

*Ind. Mun. Power Agency v. FERC*,
  56 F.3d 247 (D.C. Cir. 1995) ................................................................................. 15

*Joumaa v. Mnuchin*,
  798 F. App'x 667 (D.C. Cir. 2020) ........................................................................ 12

*Karadzic v. Gacki*,
  602 F. Supp. 3d 103 (D.D.C. 2022) ........................................................... 11, 15, 16

*Luokung Tech. Corp. v. Dep't of Def.*,
  538 F. Supp. 3d 174 (D.D.C. 2021) ........................................................................ 13

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ................................................................................................. 3-4

*Novartis Pharms. Corp. v. Johnson*,
  102 F.4th 452 (D.C. Cir. 2024) ................................................................................ 4

*Pejcic v. Gacki*,
  No. 19-CV-02437 (APM), 2021 WL 1209299 (D.D.C. Mar. 30, 2021) ................. 11

*People's Mojahedin Organization of Iran v. U.S. Department of State*,
  613 F.3d 220 (D.C. Cir. 2010) ............................................................................... 12

*Pub. Citizen Health Rsch. Grp. v. Tyson*,
  796 F.2d 1479 (D.C. Cir. 1986) ............................................................................. 15

*Tourus Recs., Inc. v. Drug Enf't Admin.*,
  259 F.3d 731 (D.C. Cir. 2001) ............................................................................... 17

*United States v. Colacurcio*,
  659 F.2d 684 (5th Cir. Unit A Oct. 1981) ................................................................ 4

*United States v. French*,
628 F.2d 1069 (8th Cir. 1980) ........................................................................................... 5

*United States v. Hall,*
536 F.2d 313 (10th Cir. 1976) ........................................................................................... 5

*United States v. Kahn,*
472 F.2d 272 (2d Cir. 1973).................................................................................... 1, 5, 10

*United States v. Lee Stoller Enterprises, Inc.*,
652 F.2d 1313 (7th Cir. 1981) ........................................................................................... 6

*United States v. Lisinski,*
728 F.2d 887 (7th Cir. 1984) ............................................................................................. 4

*United States v. Rivera Rangel*,
396 F.3d 476 (1st Cir. 2005)............................................................................................... 5

*United States v. Thompson*,
647 F.3d 180 (5th Cir. 2011) ............................................................................................. 5

*Xiaomi Corp. v. Dep't of Def.*,
No. 21-280 (RC), 2021 WL 950144 (D.D.C. Mar. 12, 2021) ..................................... 13

## Regulations

Exec. Order No. 13818,
82 Fed. Reg. 60,839 (Dec. 20, 2017) ......................................................................... 4, 11

## Other Authorities

*Bribery,* Black's Law Dictionary (12th ed. 2024) ............................................... 1, 4, 7, 9

*Bribery*, Oxford English Dictionary (2019)............................................................. 1, 4, 6

*Extortion,* Black's Law Dictionary (12th ed. 2024) .................................................... 7, 9

iii

**INTRODUCTION**

The Office of Foreign Assets Control ("OFAC") designated Vassil Bojkov ("Plaintiff") pursuant to Executive Order ("E.O.") 13818 for "having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of corruption, including the misappropriation of state assets, the expropriation of private assets for personal gain, corruption related to government contracts or the extraction of natural resources, or bribery that is conducted by a foreign person." Administrative Record ("AR") 155. Plaintiff raises three arguments for why he should be removed from OFAC's List of Specially Designated Nationals and Blocked Persons (SDN List): first, that he was extorted and thus could not have bribed officials within the meaning of E.O. 13818; second, that the nationalization of the gambling industry and removal of officials related to his bribery are sufficient for a change in circumstances; and third, that his remedial measures would bring about a change in circumstances sufficient to remove him from the SDN List. All fail.

First, Plaintiff argues that he made payments to officials that benefited his business interests under duress, and thus could not be found to have engaged in bribery or corruption under E.O. 13818. But, even assuming such statements are accurate, Plaintiff's position is unsupported. Bribery does not turn on whether one was extorted: it asks whether the individual made a payment to persuade an official to act in one's favor. *Bribery*, Oxford English Dictionary (2019); *accord Bribery,* Black's Law Dictionary (12th ed. 2024). The courts have consistently decided that extortion and bribery are not mutually exclusive and have found criminal liability where the briber was extorted. *United States v. Kahn*, 472 F.2d 272, 278 (2d Cir. 1973) ("Almost every bribery case involves at least some coercion by the public official"). If this is true in a criminal context, it applies with more force in the civil context. Thus, OFAC acted

1

reasonably in maintaining his designation in response to Plaintiff's arguments that he was extorted.  AR139-160.

As for Plaintiff's change in circumstances and remedial measure arguments, Plaintiff invites the Court to myopically examine and reweigh individual pieces of evidence to vacate OFAC's determination that Plaintiff has not generally ended or will end the activities that led to his designation.  But OFAC considered the evidence in its entirety, and nowhere does Plaintiff grapple with OFAC's finding that each piece of evidence OFAC relied upon, taken together, shows that maintaining Plaintiff's designation is appropriate.

For these and the foregoing reasons, the Court should deny Plaintiff's motion for summary judgment and instead grant Defendants' motion to dismiss, or in the alternative, motion for summary judgment.

## **ARGUMENT**

### I.    **OFAC's Decision to Deny Plaintiff's Petition for Administrative Reconsideration Was Not Arbitrary and Capricious**

Plaintiff's sole claim, that OFAC acted arbitrarily and capriciously in denying Plaintiff's petition for reconsideration, is refuted by the administrative record, as explained in full below. For that reason, and in light of the highly deferential standard of review required in these circumstances, OFAC's decision is not in violation of the Administrative Procedure Act ("APA") and Plaintiff's complaint should be dismissed.

### a.    **OFAC's Decision Is Entitled to a Heightened Deferential Standard Because This Case Involves National Security and Foreign Affairs**

When evaluating claims brought pursuant to the APA, an agency's decision is presumed valid, and a court reviews only whether that decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Pres. Overton*

2

*Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971); *accord City of Huntington v. U.S. Dep't of Hous. & Urb. Dev.*, 466 F. Supp. 3d 30, 32 (D.D.C. 2020).  This deferential standard is further heightened in cases, such as this one, that involve national security and foreign affairs. *See* Mem. in Supp. of Defs.' Mot. to Dismiss or, in the Alternative, Mot. for Summ. J. at 13-14, ECF No. 12-1 ("MTD") (collecting cases); *see also* Mem. Op. at 21-22, *Morales v. OFAC*, No. 24-cv-2519 (D.D.C. July 24, 2026), ECF No. 35.  Plaintiffs do not contest that OFAC's determinations are given heightened deference. Mem. in Opp'n to Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J., & a Cross-Mot. for Summ. J. at 12-14, ECF No. 15-1 ("MTD Opp'n").

### b.  OFAC Reasonably Concluded that Plaintiff Engaged in Bribery

OFAC's well-reasoned decision to deny Plaintiff's petition for reconsideration satisfies the APA's highly deferential standard and forecloses Plaintiff's only claim.  The denial of Plaintiff's petition for reconsideration is well-supported by evidence, including but not limited to (1) evidence that Plaintiff made bribery payments, (2) Plaintiff's admission that he made payments to officials and received benefits, (3) the former Chairman of the State Gambling Commission's ("SCG") confession to initiating schemes to help Plaintiff, (4) a July 5, 2024 article regarding a newly opened case against Plaintiff in a Bulgarian court, (5) Plaintiff's continued activity in the gambling sector, where he made bribery payments, (6) Plaintiff's retention of the proceeds of his corruption, (7) Plaintiff's unwillingness to take responsibility for his actions, and (8) the United Kingdom's addition of Plaintiff to its sanctions list under the Global Anti-Corruption Sanctions Regulations in 2023.  *See* AR153-161.  OFAC carefully reviewed all available information, explained its reasoning in the Denial Letter to Plaintiff, and reached a decision thoroughly supported by the record.  The Court should afford due consideration to OFAC's decision. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm*

3

*Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency.").

As Plaintiff admits, "[t]he operative question under E.O. 13818 is whether Mr. Bojkov 'materially assisted, sponsored, or provided . . . support for . . . corruption' or 'bribery.'" MTD Opp'n at 17 (quoting Exec. Order No. 13818, § 1(a)(iii)(A)(1), 82 Fed. Reg. 60,839, 60,840 (Dec. 20, 2017)). And bribery is defined as "[t]he giving, offering, or promising of a sum of money, gift, or other inducement (see bribe *n.* 2a) to someone in order to influence his or her behaviour, esp. to persuade him or her to act in one's favour[.]" *Bribery*, Oxford English Dictionary (2019); *accord Bribery,* Black's Law Dictionary (12th ed. 2024); *c.f. Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 460 (D.C. Cir. 2024) (in "constru[ing] th[e] text, [courts] look to the ordinary meaning of its key terms."). OFAC found, and Plaintiff admitted, paying money to former Prime Minister Boyko Borisov and former finance minister Vladislav Goranov in return for Borisov and Goranov favoring his businesses. AR153. This squarely falls within the definition and common understanding of bribery. Plaintiff's actions were the "offering" of "a sum of money" to "persuade" these government officials "to act" in Plaintiff's "favor." *Bribery*, Oxford English Dictionary (2019); *accord Bribery,* Black's Law Dictionary (12th ed. 2024).

Plaintiff's primary defense is that individuals cannot engage in bribery if they are extorted. MTD Opp'n at 16-22. Although courts have focused on bribery and extortion in the criminal context, the consistently hold "[b]ribery and extortion are not mutually exclusive." *United States v. Lisinski*, 728 F.2d 887, 892 (7th Cir. 1984); *see also United States v. Colacurcio*, 659 F.2d 684, 690 (5th Cir. Unit A Oct. 1981) ("even if the [defendants] were subjected to

4

extortion, they [could] still be convicted on the bribery charge."); *United States v. Hall,* 536 F.2d 313, 321 (10th Cir. 1976) ("bribery and extortion are not to be considered mutually exclusive nor does the fact that the alleged victims of the extortion were also bribers nullify anything."); *Kahn*, 472 F.2d at 278 ("Almost every bribery case involves at least some coercion by the public official"); *c.f. Dixon v. United States*, 548 U.S. 1, 6 (2006) ("The duress defense . . . may excuse conduct that would otherwise be punishable, but the existence of duress normally does not controvert any of the elements of the offense itself.").  Even if Plaintiff was correct that he was extorted (which OFAC found undermined by the record), this does not negate his bribery. Especially as OFAC's designation of Plaintiff is challenged under the APA rather than in a criminal context; the APA only requires the Court to find that his designation is supported by substantial evidence.

Plaintiff objects to the concept that "every payment to a public official from which the payer derived any benefit [would be] a bribe, regardless of coercion."  MTD Opp'n at 18-19. However, Plaintiff misstates the relevant principle: every illegal or corruptive payment would be a bribe, regardless of coercion.  And the cases cited by Plaintiff do not hold otherwise.  They merely stand for the proposition that an official can be found guilty of extortion even where the victim receives a benefit.  *United States v. French*, 628 F.2d 1069, 1074 (8th Cir. 1980) ("Such conduct is no less extortion because the 'victim' may in some sense receive an economic benefit when the public official neglects his duty"); *United States v. Thompson*, 647 F.3d 180, 187 (5th Cir. 2011) (liability for extortion "should not turn on the value of the deal obtained by extorted victims"); *United States v. Rivera Rangel*, 396 F.3d 476, 483 (1st Cir. 2005) ("an individual commits extortion if he obtains property from another, with the other's consent, either through

5

fear of economic loss or under color of official right").  These cases say nothing about the standard for bribery, even less so in the OFAC designation context.

Plaintiff claims that relying on benefits he received as evidence of bribery was error, because it ignores that the payments were made under coercion.  But the definition of bribery includes payments to officials to influence their behavior, "esp. to persuade him or her to act in one's favour[.]" *Bribery*, Oxford English Dictionary (2019).  Thus, it was entirely reasonable to rely on the benefits Plaintiff received from his illicit payments.  Indeed, the Seventh Circuit found a defendant criminally liable for bribery in strikingly similar circumstances.  Although *United States v. Lee Stoller Enterprises, Inc.* was a criminal case and APA standards are quite different, *Stoller* rejected the defendant promoter's extortion defense by pointing out that: (1) the defendant promoter was able to continue his operation; (2) he profited from doing so; and (3) his involvement in the enterprise was extensive as evidenced by his agreement to pay a percentage of the money he collected, the money that was eventually paid, the number of solicitations that the promoter made, and the fact that without the bribery, the solicitations would not have continued.  652 F.2d 1313, 1320 (7th Cir. 1981).  Parallel to *Lee Stoller Enterprises, Inc.*, OFAC found that Plaintiff was (1) able to continue his operation, (2) he profited from doing so, and (3) he paid a percentage of his profits, and the fact without the bribery, he would not have had such high profits.  AR152.  The fact that coercion was present was of no moment.  And that these facts can support a *criminal* conviction make them more than adequate to support OFAC's *civil* determination under the APA.

Against this black letter and common law understanding of bribery, Plaintiff makes several arguments that invite the Court to read limits into the word "bribery."  First, they rely on dictionary definitions of "[b]ribery" and "[e]xtortion" to conclude that there is a "dividing line"

6

between bribery and extortion based on "who took the initiative." MTD Opp'n at 16. But the definition of bribery offered by Plaintiff includes no reference to "initiative." *See Bribery*, Black's Law Dictionary (12th ed. 2024). It merely requires a "corrupt payment"—which Plaintiff admits to have done. *Id.*; AR152. To apply Plaintiff's reading would have the absurd effect of pardoning anyone who paid a solicited bribe, as the solicitor would be the one "taking the initiative."

Nor does the definition of extortion help Plaintiff. As discussed earlier, Plaintiff attempts to create a "dividing line" based on "who took the initiative" to distinguish between bribery and extortion. MTD Opp'n at 16. But this "initiative" inquiry is only relevant as to whether the *official* is guilty of both extortion and bribery, or simply bribery. As the complete explanation to the definition proffered by Plaintiff states:

> The dividing line between bribery and *extortion* is shadowy. If one other than the officer corruptly takes the initiative and offers what he knows is not an authorized fee, it is bribery and not extortion. On the other hand, if the officer corruptly makes an unlawful demand which is paid by one who does not realize it is not the fee authorized for the service rendered, it is extortion and not bribery. *In theory it would seem possible for an officer to extort a bribe under such circumstances that he would be guilty of either offense* whereas the outraged citizen would be excused.

*Extortion,* Black's Law Dictionary (12th ed. 2024) (citation omitted and emphasis added). This definition has nothing to do with whether the person offering the bribe is guilty of bribery based on "who takes the initiative." At most, one could say that one is not guilty of bribery when they do "not realize" they are paying an unauthorized fee. Here, the evidence amply supports that Plaintiff knew his payments to Borisov and Goranov were unauthorized: Plaintiff did not dispute paying officials in exchange for preferential treatment; Plaintiff admitted making payments to the government officials, Plaintiff did not dispute he received precedential treatment in exchange for

7

payments, and Plaintiff acknowledged he made payments to SCG to revoke competitor's gambling licenses.  AR152-53.

Based on the faulty "you can't bribe if you are extorted" theory, Plaintiff argues that OFAC failed to explain why coerced payments constituted bribery.  MTD Opp'n at 17.  But because the legal question of bribery does not turn on coercion but on the presence of illicit payments, OFAC properly stated that Plaintiff "did not disprove, let alone dispute, the existence of the bribery scheme itself in other instances, was an active participant in it, and indeed enjoyed significant profits from such scheme."  AR153.

Similarly, Plaintiff argues that OFAC ignored contradictory information by not considering evidence of coercion.  MTD Opp'n at 19-20.  But again, there is no evidence contradicting that Plaintiff made these illegal payments and received benefits in his favor. AR153.  Indeed, the Facebook post OFAC relied on was not "cherry-picked," *contra* MTD Opp'n at 20, it was simply sufficient to show that Plaintiff made the payments that led to his designation.  That OFAC did not comment on posts describing the alleged extortion simply reflects that extortion is not relevant to the designation.

Plaintiff argues that OFAC engaged in circular reasoning when determining that Plaintiff's "bribery scheme of revoking competitor's gambling licenses demonstrates a pattern of practice that calls into question" his description of an extortion scheme.  *Id.* at 15-16 (quoting MTD at 16).  Plaintiff claims that he submitted evidence and arguments that former Prime Minister Borisov and former finance minister Goranov extorted him, but Plaintiff does not identify any evidence that shows his *other* bribery scheme of paying the SCG head to revoke competitor's gambling licenses was anything other than a bribery scheme.  *Id.*  Thus, it was entirely appropriate for OFAC to weigh (1) the evidence offered by Plaintiff that Borisov and

Goranov extorted him against (2) the evidence that Plaintiff engaged in other bribery schemes and (3) conclude that the payments to Borisov and Goranov were yet another bribery scheme. And as Plaintiff concedes, the Court should not reweigh the evidence. *Id.* at 14.

Next, Plaintiff argues that the record is ambiguous as to whether it was bribery for Plaintiff to pay SCG to revoke competitor's licenses. *Id.* at 20. But there is nothing ambiguous about Plaintiff's actions: he paid SCG for the benefit of revoking competitor's licenses, and there is no evidence he did so under duress. Plaintiff seizes upon the confession of the co-conspirator, who stated that he "initiat[ed] schemes" to "help" Bojkov. *Id.* (quoting MTD at 16). Plaintiff argues that, because this co-conspirator initiated schemes, this makes it extortion and not bribery. *Id.* But even under Plaintiff's proffered definitions of bribery and coercion, Plaintiff still made "[t]he corrupt payment . . . for official action" of revoking competitor's licenses. *Bribery*, Black's Law Dictionary (12th ed. 2024); MTD Opp'n at 16 (proffering definition); AR153 (finding Plaintiff made payments to SCG to revoke competitor's licenses). Nor would this fall into the definition of extortion offered by Plaintiff, which requires the payment "by one who does not realize it is not the fee authorized for the service rendered." *Extortion*, Black's Law Dictionary (12th ed. 2024); MTD Opp'n at 16 (proffering definition). Nor did OFAC consider Plaintiff's self-serving statements as objective or credible evidence that these payments did not occur, or that they were made under duress. AR139-160. Accordingly, OFAC reasonably determined that Plaintiff engaged in other bribery schemes, and this tended to undermine his extortion defense.

Plaintiff then finds exception to OFAC's characterization of Plaintiff as "Bulgaria's richest man with significant influence," because this fact does not mean that Plaintiff cannot be extorted. MTD Opp'n at 21-22 (quoting AR152). Perhaps not in isolation. But it does tend to

show that he has the means to engage in bribery, which then tends to show that he did make bribes. What's more, even though Plaintiff could possibly be extorted, "[t]he proper response to coercion by corrupt public officials should be to go to the authorities, not to make the payoff." *Kahn*, 472 F.2d at 278. As Bulgaria's richest man with significant influence, he had more options than the average individual to not "make the payoff." Accordingly, Plaintiff's designation under E.O. 13818 does not punish him for allegedly being extorted, MTD Opp'n at 21-22, but instead seeks to disincentivize bribery, even under duress.

Finally, in an attempt to rescue his understanding of "bribery," Plaintiff argues that the Court should not defer to OFAC's understanding of "bribery" within the meaning of E.O. 13818 because *Loper Bright* requires the Court to assert its independent judgment. MTD Opp'n at 16-17. The Court does not need to defer to OFAC because it applied the plain meaning of bribery to Plaintiff's designation

### c. Plaintiff Did Not Demonstrate Sufficient Changed Circumstances

Plaintiff alleges that OFAC acted arbitrarily and capriciously when concluding that Plaintiff's asserted changes in circumstances were insufficient to warrant removal from the SDN List. MTD Opp'n at 22-30. According to Plaintiff, the significant changes include "(1) the abolition of the SCG; (2) the nationalization of the Bulgarian lottery industry; (3) the insolvency and defunct status of his lottery businesses; and (4) the severance of his ties to the relevant Bulgarian officials." *Id.* at 22. Plaintiff then states that he was designated for paying the then-Chair of the SCG the equivalent of thousands of dollars per day, beginning in February 2018, to have his competitors' gambling licenses revoked. *Id.* According to Plaintiff, now that SCG has been abolished, the Bulgarian lottery industry no longer exists, his lottery business is defunct, and he severed ties with Bulgarian officials, he can no longer bribe government officials.

10

Plaintiff is mistaken.

First, Plaintiff was designated for "having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of corruption, including the misappropriation of state assets, the expropriation of private assets for personal gain, corruption related to government contracts or the extraction of natural resources, or bribery that is conducted by a foreign person." AR155; *see also* Exec. Order No. 13818, § 1(a)(iii)(A)(1), 82 Fed. Reg. at 60,840. Characterizing Plaintiff's designation as simply for the payment of bribes to SGC understates the scope and impact of his activity. *Contra* MTD Opp'n at 22. Indeed, OFAC also relied on Plaintiff's payments to the former Prime Minister and former finance minister, unconnected from the SGC. AR143-144; AR155. Therefore, even if Plaintiff had established that one avenue—paying bribes to the SGC—is closed for corruption, it does not mean he cannot engage in corruption in other avenues.

Second, "the regulations do not say that OFAC *must* delist an individual when the original circumstances for the designation have changed." *Karadzic v. Gacki*, 602 F. Supp. 3d 103, 114 (D.D.C. 2022). "Instead, the regulations say that a designated individual 'may' petition OFAC to remove the designation." *Id.* Maintaining a sanction for past conduct alone "does not conflict with EO [13818]," *id.*, and courts have found past conduct alone sufficient to maintain sanctions. *See id.*; *Pejcic v. Gacki*, No. 19-CV-02437 (APM), 2021 WL 1209299, at *7 (D.D.C. Mar. 30, 2021).

Third, OFAC has evidence that Plaintiff has continued the same activities that formed the basis of his designation. OFAC is aware that Plaintiff is under investigation for various criminal activities, including those that involve the same activities that form the basis of his designation. AR139-140. Plaintiff alleges that an unadjudicated investigation does not establish that the

designation criteria continue to be satisfied, just that an accusation exists.  MTD Opp'n at 23.

But Plaintiff cannot dispute that an active investigation *is* evidence, and it is evidence that tends

to show the Plaintiff is still engaged in the very activities for which he was designated.

Plaintiff argues that the "D.C. Circuit,"[1] in *People's Mojahedin Organization of Iran v.*

*U.S. Department of State*, has remanded designations for similar reliance on indictments. MTD

Opp'n at 23. But it held no such thing. In *People's Mojahedin Organization of Iran v. U.S.*

*Department of State*, the court remanded the original designation because the Secretary had not

described which sources were credible, or which factual findings were associated with the

statutory bases for designation.  613 F.3d 220, 230–31 (D.C. Cir. 2010).  In contrast, OFAC has

found the existence of the investigation credible, and has explained that it tends to show that

Plaintiff is engaged in the same activities for which he was originally designated.  AR139-140.

And contrary to Plaintiff's assertion, *People's Mojahedin Organization of Iran* did not fault the

Secretary for relying on an indictment—the Secretary was faulted for not indicating what part of

the statute the indictment was relevant to.  613 F.3d at 230–31.  That case, instead, appears to

implicitly endorse relying on indictments if OFAC finds them credible and explains their

relevance, as OFAC did here.

In addition, *People's Mojahedin Organization of Iran* was in the context of an original

designation.  613 F.3d at 230–31.  The present case arises from a reconsideration petition, where

Plaintiff has the burden to show circumstances have changed or never existed.  *Joumaa v.*

*Mnuchin*, 798 F. App'x 667, 668 (D.C. Cir. 2020) ("Under the APA, Joumaa must show that the

'rationale' behind his original designation 'was never true or is no longer true.' OFAC

---

[1] The case cited by Plaintiff is a D.C. District Court opinion.

reasonably determined that Joumaa did not carry this burden[.]" (citation omitted)).  Even if Plaintiff was correct about the holding, which it is not, the decision would not be applicable here.

Plaintiff then argues that this Court has held that "the mere possibility of satisfying designation criteria cannot constitute substantial evidence of their satisfaction."  MTD Opp'n at 23.  But, putting aside this was not the standard OFAC applied, this Court has held no such thing. The two cases cited by Plaintiff, *Luokung Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174, 188 (D.D.C. 2021) and *Xiaomi Corp. v. Dep't of Def.*, No. 21-280 (RC), 2021 WL 950144, at *7 (D.D.C. Mar. 12, 2021) both held the standard is "whether a reasonable mind might accept a particular evidentiary record as adequate to support a conclusion." (citation omitted).  In both cases, under an unrelated statute, the court preliminary enjoined Chinese Military Company designations because the only evidence was (1) manufacturing of dual-use items and (2) evidence of "potential" affiliations with the Chinese military.  *Luokung Tech. Corp.*, 538 F. Supp. 3d at 182; *Xiaomi Corp.*, 2021 WL 950144, at *8.  In contrast here, the evidentiary record is sufficient: direct evidence of bribery, confessions from Plaintiff that payments were made, benefits received for those payments, continued operation in the gambling industry where Plaintiff made bribes, continued enjoyment of the benefits of those bribes, criminal investigations regarding the bribes in Bulgaria, and a separate designation from the United Kingdom for behavior after these bribes.

Contrary to Plaintiff's assertions, MTD Opp'n at 23-24, the criminal proceedings for bribery and corruption in Bulgaria corroborate, rather than contradict, the other evidence that Plaintiff engaged in corruption and bribery.  First, Plaintiff mischaracterizes the article on his indictment, describing it as "undercut[ting]" the point OFAC used it to make by naming Plaintiff the "instigator" of the bribery scheme.  *Id.* at 24-25.  But the article is entirely consistent with

13

OFAC's determination.  It names Plaintiff as the "instigator" of the bribery scheme—the person who initiated the scheme.  AR157.  Even under Plaintiff's suspect reading of bribery, it places the "initiative" on Plaintiff.  And it is of no moment that his accuser is complicit in the scheme, *contra* MTD Opp'n at 24-25, as the payment of a bribe makes complicit the person who accepts the bribe.  Said another way, that the corrupted official committed a crime in no way exonerates Plaintiff.

Corroborating the conclusion that Plaintiff continues to engage in activities that formed the basis of his designation, the United Kingdom designated Plaintiff for similar activities that occurred after Plaintiff's United States designation.  AR157.  Plaintiff concedes that OFAC can properly weigh this evidence.  MTD Opp'n at 28.  But he then lodges the same criticisms against reliance on this designation as he did against the Bulgarian criminal proceeding. *Id.*  For the same reasons that these criticisms fail with respect to the Bulgarian criminal proceeding, they fail here too.  *See supra*.

Plaintiff also argues that OFAC improperly relied on Plaintiff's launch of a new political party to sustain the designation because OFAC also stated that "registration of a political party was not used in the basis for [his] designation." MTD Opp'n at 25, 27 (quoting AR153-154).  But Plaintiff misreads the record: OFAC did not use the launch of the political party as a reason to designate Plaintiff, OFAC used the launch of the political party to find that the proposed remedial measures would be inadequate.  OFAC identified Plaintiff's political activities of "accus[ing] other politicians of corruption" as "undermining the utility of [Plaintiff's] proposed remedial measures," such as anti-corruption support.  AR156.  It is entirely consistent not to designate Plaintiff for political activities, but then to also find that those same political activities undercut the utility of proposed remedial measures.

Plaintiff next argues that his involvement in the gambling industry cannot support his continued designation because he was not sanctioned for being involved in the gambling industry. MTD Opp'n at 25. Plaintiff misses the point. Plaintiff engaged in corruption and bribery within the gambling business and to support his gambling business. AR152-153; AR155. The fact that he continues to operate in the same industry where he was willing to engage in corruption is evidence that he is or will continue to engage in corruption.

Plaintiff also alleges that OFAC erred in relying on reporting that Plaintiff is involved in gambling operations in Moldova and Georgia when he denied that he is. MTD Opp'n at 26-27. Plaintiff argues that discounting his unsupported denials while relying on reporting somehow "inverts" the "substantial-evidence" standard. *Id.* at 27. Again Plaintiff misses the point. The "substantial evidence" standard asks whether his designation is supported by substantial evidence. *Karadzic*, 602 F. Supp. 3d at 109 ("'[I]f [ ] OFAC's actions were not arbitrary and capricious and were based on substantial evidence,' the Court must uphold its decision.") (quoting *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 162 (D.C. Cir. 2003)). What Plaintiff asks is for the Court to reweigh (1) the reporting that Plaintiff has businesses outside of Bulgaria against (2) Plaintiff's representation that he does not have these businesses. "[I]t is not for [the Court] to reweigh the conflicting evidence or otherwise to substitute [its] judgment for that of the [agency]." *Ind. Mun. Power Agency v. FERC,* 56 F.3d 247, 254 (D.C. Cir. 1995); *see also Pub. Citizen Health Rsch. Grp. v. Tyson*, 796 F.2d 1479, 1495 (D.C. Cir. 1986) ("Our function . . . is only to search for *substantial* evidence, not proof positive. Furthermore, we do not reweigh the evidence and come to our own conclusion; rather, we assess the reasonableness of [the agency's] conclusion."). As reflected by the record, OFAC acknowledged Plaintiff's denial of other gambling businesses, weighed it against the public

15

reporting, and determined that he was engaged in gambling businesses in Georgia and Moldova. AR155.

Plaintiff then alleges that OFAC erred in (1) speculating that Plaintiff's continued enjoying the fruits of his corruption, and (2) relying on enjoyment of corruption proceeds as evidence of unchanged circumstances. MTD Opp'n at 25-26. First, OFAC did not rely on speculation to conclude that it was possible Plaintiff benefits from the proceeds of corruption: OFAC identified a lack of financial restitution and Plaintiff's admission that he has access to funds earned before his designation. AR155. Second, maintaining a sanction on an individual who maintains his ill-gotten gains advances the intended purpose of economic sanctions— deterrence and incentivizing a legitimate change in behavior. Otherwise, sanctions would lose all their teeth: bad actors could engage in corruption until they received all the benefits desired and then quit their sanctionable behavior to remove the designation.

Finally, Plaintiff characterizes the record as maintaining sanctions for past behavior. MTD Opp'n at 29-30.[2] This can be safely dispensed with: OFAC collected evidence of Plaintiff's willingness and ability to continue in the activities that led to his designation. *See* AR139-160.

### d. Plaintiff did not show sufficient remedial measures.

OFAC carefully considered the remedial measures proposed by Plaintiff to facilitate his removal from the SDN list and concluded that they were insufficient to negate the basis for the

---

[2] In making his argument, Plaintiff relies *Karadzic v. Gacki*, 602 F. Supp. 3d 103, 115 (D.D.C. 2022). *Karadzic* is of no help to Plaintiff. In *Karadzic*, OFAC relied "on historical evidence" and statements by the designated person that criminal proceedings were an injustice and illegitimate. 602 F. Supp. 3d at 115. The court upheld the designation. As in *Karadzic*, OFAC has relied on historical evidence of bribery and evidence that Plaintiff has not taken "accountability for his actions" and "focused on casting blame on others for compelling him to commit corrupt acts." AR156. If this was sufficient for *Karadzic*, it is sufficient here too.

designation or lead to a change in circumstances.  AR155-156.  Plaintiff argues that OFAC was required to explain why Plaintiff's commitment to exit the gambling industry, submit to audit, and sever relationships related to corruption was not sufficient remedial measures.  MTD Opp'n at 31.  But that is not the standard: as Plaintiff concedes, all OFAC need do is "set forth [the] reasons for [its] decision[s]." *Id.* (citation omitted); *see also Tourus Recs., Inc. v. Drug Enf't Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001).

And OFAC did so.  OFAC weighed the evidence and stated that the Plaintiff had "not sufficiently demonstrated" that the activities forming the basis for his designation "generally has ended or will end."  AR155-156.  OFAC noted that Plaintiff had accused other politicians of corruption, which undermined the utility of the remedial measures connected to making public statements for reform.  In addition, the proposed remedial measures did not "adequately address the past conduct for which [Plaintiff] was designated and would not prevent [Plaintiff] from, in the future, engaging in the sanctionable activity that led to his designation."  AR156.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion for summary judgment and grant Defendants' motion to dismiss or, in the alternative, for summary judgment.

Dated: July 31, 2026                    Respectfully submitted,

                                        BRETT A. SHUMATE
                                        Assistant Attorney General

                                        STEPHEN M. ELLIOTT
                                        Assistant Branch Director

                                        */s/ Michael Bruns*
                                        Michael Bruns

17

Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
michael.bruns@usdoj.gov

*Counsel for Defendants*

18